UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRETT RANDOLPH PIKE,<br><br>            Plaintiff,<br><br>v.<br><br>ISCI WARDEN JOHANNA SMITH,<br><br>            Defendant. | Case No. 1:11-cv-00208-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in this prisoner civil rights matter are Defendant's Motion to Dismiss (Dkt. 17), Plaintiff's Motion for Leave to Amend Complaint (Dkt. 19), and Defendant's Motion to Strike (Dkt. 24).

The parties have consented to a United States Magistrate Judge conducting all proceeding under 28 U.S.C. § 636(c). (Dkt. 14.) The Court finds that the parties have adequately stated the facts and legal arguments in their briefs and that the decisional process would not be significantly aided by oral argument. In the interest of avoiding delay, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1.

For the reasons set forth below, Plaintiff's Motion to Amend will be granted, Defendant's Motion to Strike will be denied, and Defendant's Motion to Dismiss will be denied.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), presently incarcerated at South Idaho Correctional Institution. (Dkt. 3, p. 3.) When he arrived in IDOC custody on December 23, 2010, he was placed in the Reception and Diagnostic Unit (RDU) at the Idaho State Correctional Institution, where he would remain for the next six weeks. (*Id*. at 3-4.)

Plaintiff contends that he was issued only a "thin cotton jumpsuit" and "flimsy shoes with cracked soles" to wear. (Dkt. 3, p. 3.) In the first week he had to walk outside for 350 yards three times a day for meals. (*Id*.) During that time, he was exposed "to rain, snow, hail, fierce winds, and temperatures well below freezing," the lowest of which was 5 degrees. (*Id*.) As a result, Plaintiff experienced "shivering, teeth chattering, and numbness of extremities." (*Id*. at 4.) He alleges that when he and other inmates complained about the situation, Correctional Officer S. Jenkins told them that "it would be futile to file a concern form or grievance as the warden [Defendant Johanna Smith] was aware of the situation." (*Id.*)

Plaintiff was issued a jacket on December 30, 2010, and a hat on January 4, 2011, which ameliorated some of the harsher conditions. (*Id*.) His "lower body was still essentially exposed," however, and his shoes "allowed freezing water to infiltrate and saturate my socks resulting in pain and numbness." (*Id*.) On February 3, 2011, he was moved into the general population, where he was "issued denim pants and sneakers which did not leak." (*Id*.)

**MEMORANDUM DECISION AND ORDER - 2**

On May 10, 2011, Plaintiff filed a Prisoner Civil Rights Complaint under 42 U.S.C. § 1983 against Warden Johanna Smith, alleging that she had a "policy of not providing adequate clothing to RDU inmates," in violation of the Eighth Amendment. (Dkt. 3.) The Court reviewed the Complaint and permitted the claim to go forward, but it denied Plaintiff's application to proceed in forma pauperis and his request for appointment of counsel. (Dkt. 7.) Plaintiff has paid the full filing fee, and Jeremiah Hudson has entered an appearance as Plaintiff's counsel. (Dkt. 9.)

Defendant Smith has since filed an Answer (Dkt. 11), followed by a Motion to Dismiss (Dkt. 17). In her Motion, Defendant argues that Plaintiff failed to exhaust the administrative remedies that were available to him within IDOC before filing his lawsuit. (Dkt. 17-1, pp. 3-5.) Additionally, Defendant argues Plaintiff's claim against her in her official capacity for monetary damages is effectively a claim against the state of Idaho, which must be dismissed because Idaho is immune from liability under the Eleventh Amendment. (*Id.* at 5-7.)

After receiving Defendant's Motion, Plaintiff requested leave to amend his Complaint to reflect that he intends to sue Defendant in her individual capacity for damages as well as in her official capacity for prospective injunctive relief. (Dkt. 19.) He also submitted an affidavit opposing dismissal, portions of which Defendant seeks to have stricken from the record as inadmissible hearsay. (Dkt. 24.)

The Court is fully advised in these matters and is now prepared to issue its ruling.

**MEMORANDUM DECISION AND ORDER - 3**

# PLAINTIFF'S MOTION FOR LEAVE TO AMEND

1. **Standard of Law**

Rule 15(a) of the Federal Rules of Civil Procedure provides that, after the initial period for amendments as of right, pleadings may be amended only with the consent of the opposing party or by leave of court, which shall be given freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to allow an amendment, a court must assess four factors: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Ditto v. McCurdy*, 510 F.3d 1070 (9th Cir. 2007) (citations omitted). There is a general presumption in favor of granting leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In addition,"a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

2. **Discussion**

Plaintiff seeks an order allowing him to file his proposed Amended Complaint solely to clarify that he is suing Johanna Smith in her official capacity for injunctive relief *and* in her individual capacity for monetary relief. (Dtk. 20, p. 2.) In support, he asserts that "at the time he filed his [*pro se*] Complaint, Plaintiff was unaware that he would be barred from seeking monetary relief by failing to add Johanna Smith in her individual capacity in the caption of his Complaint." (*Id*.)

Defendant objects to the Motion, arguing that the proposed amendment is futile because "there is no nexus between any action or inaction alleged against Defendant and

**MEMORANDUM DECISION AND ORDER - 4**

any alleged constitutional deprivation sustained by Plaintiff" and because Defendant is shielded from a claim for monetary damages by the doctrine of qualified immunity. (Dkt. 25, pp. 3-5.) Defendant does not contend that Plaintiff is acting in bad faith, has unduly delayed proposing the amendment, or that she would be prejudiced. After weighing the requisite factors and considering the parties' arguments, the Court finds that the proposed amendment would not be clearly futile.

Defendant first contends that Plaintiff has not set forth sufficient facts showing that she participated personally in a constitutional violation, and because there is no respondeat superior liability under 42 U.S.C. § 1983, Plaintiff has not alleged a claim against her on which monetary damages may be based. (Dkt. 25, p. 3.) The Court is not persuaded by this argument.

In his Complaint, together with its attachments, Plaintiff alleges that Defendant Smith failed to provide RDU inmates with clothing and shoes to shield them against winter weather between December 2010 and late January 2011. He asserts that when he complained to correctional officers, they informed him that "the Warden was aware of the situation" and was unwilling to change it. (Dkt. 3, p. 3.) He further alleges that "Warden Smith's policy of not providing adequate clothing to RDU inmates constitutes the unnecessary and wanton infliction of pain." (*Id*. at 4.) In January of 2011, he directed an offender concern form to the Warden Smith, complaining that "the clothing I have been provided with is inadequate for the winter weather." (Dkt. 3-1, p. 6.) As a result, Plaintiff's has sufficiently alleged that Defendant participated personally in the

**MEMORANDUM DECISION AND ORDER - 5**

constitutional injury that he contends he suffered.

Defendant next argues that she is immune from liability on a claim for monetary damages. Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling on a qualified immunity defense, a court should consider two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if the plaintiff has alleged a deprivation of a constitutional right, a court "is to ask whether the right was clearly established." *Id*. The Supreme Court has held that a reviewing court may address whether the right was clearly established before taking up whether a constitutional violation was shown on the facts of the case before it, if that is the easier path. *Pearson v. Callahan*, 555 U.S. 223, 226 (2009). The dispositive inquiry is whether, in the specific context of the case, "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

The answer to these questions turns on the nature of Plaintiff's allegations and his Eighth Amendment claim. To state a claim of cruel and unusual punishment under the Eighth Amendment, a plaintiff must show that he is incarcerated "under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834 (internal citation

**MEMORANDUM DECISION AND ORDER - 6**

omitted). Basic human needs include food, clothing, shelter, sanitation, medical care, and personal safety. *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).

In 1994, the Ninth Circuit held that "[t]he denial of adequate clothing can inflict pain [in violation of] the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995). In determining whether a deprivation of that nature rises to a constitutional violation, the "circumstances, nature, and duration of [the] deprivation must be considered. The more basic the need, the shorter the time it can be withheld" by prison officials. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (internal quotation marks and citations omitted). Modest deprivations of clothing "can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." *Id; see also Balla v. Idaho State Bd. Of Corrections*, 595 F.Supp. 1558, 1566, 1575 (D. Idaho 1984) (finding a constitutional violation when prison officials did not provide clothing that was sufficient to guard against Idaho's winter temperatures).

In the present case, Plaintiff alleges that he was without a jacket for a week in cold weather and that he was not given unbroken shoes for over a month, which allowed freezing water to seep through his socks, causing numbness and pain. Plaintiff asserts that Defendant knew of these conditions and that she refused to change them. These facts, if true, show that Defendant deprived Plaintiff of the basic human need of adequate clothing during those periods, and his right to such clothing under the Eighth Amendment was clearly established long before 2010 and early 2011. The Court finds that Defendant is

**MEMORANDUM DECISION AND ORDER - 7**

not entitled to qualified immunity based on the facts as alleged, but it expresses no opinion on the ultimate merit of the allegations.

Based on the foregoing, the Court will grant Plaintiff leave to amend his Complaint to clarify that he is suing Defendant in her individual capacity for monetary damages and in her official capacity for prospective injunctive relief.[1] Due to this clarification, Defendant's argument in her Motion to Dismiss that the Eleventh Amendment bars a suit against her in her official capacity solely for money damages is now moot.

Defendant's additional argument that Plaintiff failed to exhaust his administrative remedies before filing his Complaint is still an active dispute that must be resolved. The Court will now address that aspect of Defendant's Motion.

### DEFENDANT'S MOTION TO DISMISS FOR LACK OF EXHAUSTION

**1.     Standard of Law**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

---

[1] It appears that Plaintiff is no longer subject to the clothing "policy" about which he has complained while he was detained in the RDU, and it is unclear whether he might be subjected to the same policy in the future. It is therefore possible that his request for prospective injunctive relief – to compel "Warden Smith to comply with its 1984 order to provide ISCI inmates with adequate clothing" (Dkt. 3, p. 7) – is now moot because such relief would not apply to him, but the Court is unable to resolve that issue on the current record and briefing.

**MEMORANDUM DECISION AND ORDER - 8**

*Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

By its plain terms, the PLRA requires prisoners to exhaust only those avenues of relief that are "available" to them. 42 U.S.C. § 1997a(e). When prison officials prevent a prisoner from using the correct channels to route a complaint, an administrative remedy that may be theoretically in place will not be available to the prisoner as a practical matter, and the failure to adhere to technical requirements will be excused. *Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Confusing or contradictory information given to a prisoner is also pertinent "because it informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). In addition,"improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required

**MEMORANDUM DECISION AND ORDER - 9**

under the PLRA." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010).

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove that the plaintiff failed to exhaust, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id*.

2.    **The Idaho Department of Correction's Exhaustion Procedure**

The IDOC uses a three-step grievance process that requires a prisoner to first submit an informal offender concern form describing the problem, then file a formal grievance form, and finally complete the process with an appeal of any adverse decision. (Dkt. 17-3, Affidavit of Jill Whittington, ¶ 4.)

The prisoner begins this process by routing the offender concern form to the staff member most capable of addressing the problem. (Dkt. 17-3, ¶ 5.) If the issue is not resolved, the prisoner then completes a grievance form and files the grievance within 30 days of the "incident." (*Id*. at ¶ 6.) The grievance must contain specific information regarding the nature of the complaint, including dates, places, names, and how the offender has been adversely affected. (*Id*. at ¶ 7.)

If the grievance is properly completed, the "Grievance Coordinator" will route it to the appropriate staff member, who must respond within 10 days. (Dkt. 17-3, ¶ 7.) After the staff member responds, the Grievance Coordinator forwards the grievance to the

**MEMORANDUM DECISION AND ORDER - 10**

"reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues a decision. (*Id*.) If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 5 days to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 8.)

Once the appellate authority has issued its decision, the grievance is then routed back to the inmate, thus concluding the administrative review process. (*Id*. at ¶¶ 9-10.)

**3.    Discussion**

Defendant contends that although Plaintiff submitted offender concern form on January 12, 2011, he did not file a formal grievance until February 21, 2011, which is beyond the 30-day deadline. Because the Grievance Coordinator returned the grievance to him unprocessed, according to Defendant, Plaintiff did not complete all three steps in IDOC's grievance procedure in an appropriate manner before he filed his lawsuit.

Plaintiff counters that he complained verbally to Correctional Officer Jenkins about the lack of winter clothing not long after he arrived at RDU, and Jenkins told him that it would be futile to file a grievance "as the Warden was aware of the situation." (Amended Complaint, Dkt. 19-1, p. 3.) Despite this, Plaintiff asserts that he routed his offender concern form within a matter of days, and when it was denied, he asked Jenkins what he should do to appeal it. (Dkt. 21, p. 2.) Plaintiff has submitted an affidavit in this proceeding in which he contends that Jenkins then refused to provide a grievance form to him, telling him instead "that there is nothing more he could do." (Dkt. 22, Affidavit of Brett Randolph Pike ("Pike Aff."), ¶ 4.) Plaintiff alleges that he did not have access to a

**MEMORANDUM DECISION AND ORDER - 11**

grievance form until after he went to the general population on February 3, 2011. (Pike Aff. at ¶ 6.) He further contends that a Corporal Lum told him that a grievance "needed to be filed in 30 business days," rather than 30 calendar days. (*Id.* at ¶ 8.) Plaintiff filed his grievance on February 21, and when that grievance was not processed, he filed an appeal. (*Id.* at ¶ 9.) He also filed two more appeals between March 18 and March 31. (*Id.* at ¶ 10.)

Based on this proffer, Plaintiff contends that, contrary to Defendant's argument, he actually exhausted his administrative remedies in a timely fashion because he was subjected to unconstitutional conditions in the RDU until February 3, 2011, and his February 21 grievance was filed within 30 days of the end of the "incident" about which was complaining. Under this theory, the Grievance Coordinator improperly screened his grievance as untimely. Plaintiff also argues, in the alternative, that his access to IDOC's grievance procedure was hindered by vague standards and misleading information from correctional officers, and that any administrative remedy that was theoretically available to him was not available as a practical matter. The Court will accept, for these purposes, Plaintiff's alternative argument, though his first argument also has some bearing on the Court's decision, as will be explained below.

As an initial matter, the Court is unpersuaded by Defendant's contention that the Court must exclude from record, on hearsay grounds, those portions of Plaintiff's Affidavit that recite what Officer Jenkins and Corporal Lum allegedly told him about the availability of the grievance process. Under Rule 801 of the Federal Rules of Evidence, "hearsay" is defined as a statement that a declarant has made outside of testifying in court

**MEMORANDUM DECISION AND ORDER - 12**

that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). A statement that is offered to show only its effect on the listener is not offered to prove the truth of the statement and is "properly considered as non-hearsay." *See, e.g., United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991).

Here, Plaintiff is not offering Officer Jenkins's statement "that there is nothing more he could do" to prove that there was, in fact, nothing more that could be done. To the contrary, Defendant argues that IDOC *did* have an administrative review process that Plaintiff did not use properly; therefore, Plaintiff is offering Jenkins's statement to show why he did not begin that process immediately.

This is equally true of Corporal Lum's alleged statement that a grievance could be filed within 30 business days. Plaintiff is offering Lum's statement to show why Plaintiff believed that he may have had a longer amount of time than IDOC rules allowed, irrespective of whether Lum's statement is actually true or false. In short, these statements are offered to explain the effect they had on Plaintiff and to explain his subsequent actions. The credibility and weight to be assigned to this evidence is a separate question from its admissibility.

The Court further finds that, based on the record before it, Plaintiff has made a sufficient showing that he was given misleading advice and hindered from completing IDOC's administrative remedy, a showing that is not called into question by countervailing evidence from Defendant. Ordinarily, the Court would be skeptical of a prisoner's claims that correctional officers thwarted his access to the grievance procedure.

**MEMORANDUM DECISION AND ORDER - 13**

Such claims are easy to make and difficult to disprove. But Plaintiff's allegations are supported, at least to an extent, by the contemporaneous record that was created closer in time to when the statements were allegedly made.

In particular, in Plaintiff's February 21, 2011 grievance, he notes that "C/O Jenkins refused to provide me with a grievance form and told me there was nothing more I could do." (Dkt. 22, p. 9.) In his March 9 grievance, he contends that "Cpl. Lum informed me that the time limits were business days." (*Id*. at p. 10.) In his March 18 grievance, he reiterates that he was "assured by Cpl. Lum that the deadlines in the grievance procedure refer to business days not calendar days." (*Id*., Exhibit E.) Finally, on March 28, he asserted that "it is unreasonable to expect a new inmate to have better or more accurate information about the grievance procedure than CO's who presumably receive training in how to handle grievances. As stated earlier the response to my first OCF was delivered 11 days after it was dated & at that time C/O Jenkins informed me that there was nothing more I could do." (*Id*., Exhibit E, at p. 14.)

Though not dispositive, this documentation lends corroborating support to Plaintiff's current claims. On the other side of the balance, Defendant has come forward with no evidence that contradicts Plaintiff's statements about what correctional officers said or did, such as affidavits or declarations from the officers themselves, and it is Defendant's burden to prove that dismissal is warranted based on a failure to exhaust administrative remedies. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002).

Moreover, an ambiguity in IDOC regulations as to which "incident" triggers the

**MEMORANDUM DECISION AND ORDER - 14**

30-day timeline for filing a formal grievance adds to the confusion. The Grievance Coordinator has testified in an affidavit that a grievance form "is required to be filed within thirty (30) days of the incident that is the basis for the grievance." (Whittington Aff., at ¶ 6.) This comports with IDOC's written regulation, which states that "[g]rievances must be submitted within 30 days of the incident." (Dkt. 17-5, p. 5.) For a one-time, short lived event, determining when the "incident" started the running of the 30-day clock should pose no difficulty. Here, in contrast, Plaintiff asserts that he was exposed to unconstitutional conditions the entire time that he was in the RDU, until February 3, 2011, and the "incident that is the basis for the grievance" did not end until that date, meaning that he should have had 30 days from February 3 in which to file his grievance. According to Plaintiff, the February 21 grievance was timely pursuant the IDOC's own rules.

This argument has some logical force behind it. Much like any fair statute of limitations, the deadline for filing a grievance should not expire at least until the prisoner has been given a reasonable amount of time after the "incident" has actually concluded to begin the process. But cutting against Plaintiff's position on these facts is that he did not state in his February 21 grievance that he was exposed to these conditions until February 3, to alert the Grievance Coordinator that his complaint may have been timely. It was his burden to include the dates of the incident about which he was complaining, *see* Whittington Aff., at ¶ 7, and the Court cannot conclude that the Grievance Coordinator improperly dismissed his grievance. *Cf. Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 15**

2010) (holding that improper screening of an inmate's administrative grievances excuses the failure to complete the process). In any event, the closeness of this issue supports Plaintiff's more general argument that to the extent he did not comply perfectly, his failure to do so should be excused.

The facts of this case fall in line with the Ninth Circuit's decision in *Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). There, a prisoner began the internal administrative review process by routing an informal complaint in which he claimed that he had been subjected to an unconstitutional strip search. *Id.* at 1220. A prison official denied the complaint on the ground that a written prison policy allowed the search. *Id.* When the prisoner then sought a copy of the policy so that he could challenge it, the Warden gave him only a citation, which was incorrect, and "the mistake led [the prisoner] on an almost ten-month wild goose chase." *Id.* at 1226. Eventually, he filed a final level appeal challenging the search, but it was denied as untimely. *Id.* at 1221.

The Ninth Circuit held that while the prisoner may not have exhausted the prison's administrative review process in accordance with the prison's rules, the administrative remedy was "effectively unavailable" to the prisoner. *Nuñez*, 591 F.3d at 1224. Integral to that decision was the Ninth Circuit's finding that the prisoner "took reasonable and appropriate steps to exhaust his . . . claim and was precluded from exhausting not through his own fault but by the Warden's mistake." *Id.*

As in *Nuñez*, Plaintiff has alleged facts with supporting evidence tending to show that IDOC's administrative grievance procedure was "effectively unavailable" to him.

**MEMORANDUM DECISION AND ORDER - 16**

Even though he apparently did not complete the process in a timely manner, like the prisoner in *Nuñez* he took reasonable and appropriate steps to alert prison officials of the problem. He verbally complained to Officer Jenkins, and while it appears that he was dissuaded from proceeding beyond an offender concern form and was given misleading or incorrect advice about deadlines, he nonetheless pressed the issue several times in grievances and appeals in the weeks that followed. In other words, he gave prison officials an opportunity to address the problem before he sued the Warden.

For all of these reasons, Plaintiff's failure to exhaust IDOC's grievance procedure properly is excused, and Defendant's Motion to Dismiss based on a failure to exhaust administrative remedies will be denied. Because the deadline for filing motions for summary judgment expired while Defendant's Motion to Dismiss was pending, the Court will reset that deadline, and the parties shall adhere to the scheduling order to follow.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Leave to Amend (Dkt. 19) is GRANTED. To maintain clarity in the record, Plaintiff shall re-file his Amended Complaint forthwith, which is currently lodged as an exhibit to the Motion for Leave to Amend (Dkt. 19-1).

2. Defendant's Motion to Strike (Dkt. 24) is DENIED.

3. Defendant's Motion to Dismiss (Dkt. 17) is DENIED.

4. The Court's previous Scheduling Order (Dkt. 13) is modified as follows.

On or before **October 30, 2012**, the parties shall file any motions for summary judgment with accompanying briefs. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho. Should Plaintiff or Defendant wish to attend a settlement conference, they should file a stipulation to attend a settlement conference and contact the Court's ADR Director, Susie Boring-Headlee.

DATED:  **September 17, 2012**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**